The first case up this morning is 411-0691-692, Consolidated, UDI 2 LLC, UDI Married to a Man at Risk, Department of Public Health, UDI Living Apps and Zinc, UDI Materas vs. Department of Public Health. For the appellant, there's Jason Mundy. You are he, sir? I am. And for the appellee is Paul Resett. Correct. Is that pronounced correctly? Yes, sir. Okay. Mr. Lundy, you may proceed, sir. May it please the Court. Counsel. Thank you. I'm Jason Lundy representing the appellants. Maryville Manor is a skilled nursing facility. Maple Terrace is an intermediate care facility for adults with developmental disabilities. The Illinois Department of Public Health regulates both of these homes, and at the relevant times, they were both licensed under the authority of the Illinois Nursing Home Care Act. For both of these homes, we have contested IDPH's jurisdiction to take regulatory enforcement action after surveys of the facilities in 2007 and 2008, because IDPH did not timely make a determination of a violation after the surveys. I'll also reserve some time to discuss Maple Terrace separately, as we are also contesting the merits of IDPH's decision that a violation of the Nursing Home Care Act and regulations occurred in relation to care for one resident. Your Honors, on the jurisdictional issue, it is one of statutory construction with several aspects to it. We primarily look at the plain language of Sections 3-702 and 3-212C of the Nursing Home Care Act, but also how these sections relate together, relate to Article 3, Part 3 of the Act, and the Act as a whole. The surveys at Maryville Manor and Maple Terrace were complaint surveys, as opposed to an annual licensure survey or an incident report survey. Under the Nursing Home Care Act, Section 3-212 lays out the requirements and procedures for an annual incident report survey. Section 3-702 contains some enhanced time periods for surveys that are generated by complaints, as well as some actions the Department takes in relation to the person who called in that complaint. The plain language of 3-702 first talks about when the Department should initiate a complaint, and it should be done differently based on the severity of the nature of the complaint. That's not at issue in this case here. The last part of Section 3-702A says that the Department shall make a decision about whether a valid complaint is a violation within 30 working days. And the Department's argument is, that's the end of our analysis. They have 30 working days to make the determination, but because no negative language is used in that statute, it's not mandatory and they suffer nothing by violating that time period. And in these two cases for Maryville Manor, it took the Department 143 days to determine a violation after the conclusion of a complaint survey, and it took the Department 130 days after the conclusion of Maple Terrace's complaint survey. But, Your Honors, the time frame for IDPH to make a determination of a violation is not contained only in Section 3-702. We also have to look at the Act as a whole and the provisions of 3-212C. 3-212C says that the Director must make a determination of a violation no later than and that negative language no later than makes it a mandatory time frame in which the Department loses jurisdiction over the survey if they don't meet that. Well, what about, though, the argument which the Department makes that 3-212C doesn't And isn't this sort of a double-edged sword? That is, when the legislature wanted to use language that was, for lack of a better way to put it, more mandatory than directory, they used the negative language. They did it in 2-212C, and they did it in 3-702. So why, or 702 rather, why isn't the inference that, one, the legislature is capable of drawing these distinctions and has in this very Act, and two, in the section that applies, they didn't, so your argument on its mandatory nature is undercut. What do you say to that? I understand, Your Honor, and I think the reason that argument doesn't follow is because we don't have to read 702 and 2-212C separate from each other. We have to read them together. And whereas 702 requires the Department to make an earlier determination after a complaint investigation within 30 working days, which is directory, and the legislature has the tools to make it mandatory if it wants to, our analysis doesn't end there as far as the determination of a violation. If it ends there, then there's several other parts of the Act that can't be pulled into play to allow the Department to take further action, such as issuing a fine, issuing a conditional license, giving the opportunity for a facility to have a hearing, all actions that it took following their determination of a violation. To get to all those sanctions and remedies and the other procedural aspects of the entire Nursing Home Care Act, we have to go back to Section 212C and Section 301 to initiate the rest of the actions of the Act as a whole. So where 3-702 has a directory 30 working day time limit on the Department, the Department is not exempt from the overall mandatory 60 day timeframe to make a determination of an investigation or survey. So you have to read 702 and 212C together. Then it seems to me your fundamental argument is that the Department is wrong in drawing the distinction it struck. That is correct, Your Honor. The Department is wrong to say 3-702 has a directory timeframe and that's the end of our analysis. And I think we can illustrate why that's an incorrect analysis through a couple examples. One, if that's the end of the analysis, how does the Department get to issuing the notice of a violation, imposing a fine assessment, imposing action against the license, such as a conditional license or a license revocation? All of those sections are in Article 3, Part 3. Section 301 talks about issuing the notice of violation, 3-305 imposes fines, all those things. If the Department looks only at Section 3-702, there's no tie-in to the other provisions of the Act. Well, but it just seems to me that that's an argument which would be more compelling if there were multiple procedural provisions contained within the Act. In other words, if I understand you correctly, through the Act, Article 3 sets forth various things that the Department should do if it finds a violation and how that might work. And there's just one series of that. Is that correct? Correct. Okay. But, as you pointed out, there are two different notice provisions involved here. We have a notice provision in 702, and we have a notice provision in 212, and then the question is, gee, if we have a series of same provisions to be taken if a violation is found, why do we have two different notice provisions? Your Honor, I think there's a very subtle distinction there. There are not two different notice provisions in the Act. Section 3-301 is the only provision that authorizes the Department to issue a notice of violation. You are correct. That was a misspeaking by me. I labeled it incorrectly. As opposed to a notice provision, a timing requirement. That would be a better way to put it. We have different timing requirements. We have one that you say could be viewed as directory in 702, and we have the other which has the negative language which speaks of mandatory in 212. But they're different. Yet there's still only one way to go once you've found the provisions. Why is that? Your Honor, I don't see where that's incompatible at all. Because having a shorter directory time frame and a more generous 60-day time frame that's mandatory I think is easily reconciled. That the Department is directed to act more expediently with respect to complaints. I mentioned the earlier part of 702. In complaints that deal with very serious allegations, the Department is supposed to make a complaint within 24 hours. It's abuse and neglect. It's within seven days. The legislature has demanded some very quick action that the Department take with respect to complaints. And it says they shall make their determination within 30 working days. One thing that I think gets lost a bit in this analysis of directory versus mandatory is the General Assembly is still saying the Department shall do this. We can excuse their untimeliness because the legislature didn't use mandatory language. But there's still the directive to get this done within 30 working days. Well, the difference though is you're saying that if this deadline comes and goes, they are barred from taking any further action. That's exactly right. Such as they are when they are doing annual investigations or incident report investigations that don't get channeled through the more expedient timeframes of 702, but are only within the timeframes of Section 212C. It is not unusual at all within the Nursing Home Care Act that the Department is barred from taking action when they take too long to determine that a violation occurred after their survey is completed. Your opponent refers to the UDI case out of the 1st District, and I don't notice even in your repository that you even refer to it. Did you say whether that applies or not? Are you even acquainted with the case? Your Honor, it does apply, I think, on an issue where it seems like there's no disagreement between the parties. The UDI case recently issued out of the 1st District talks about the mandatory timeframe of Section 3-212C. And in that case, the Department took more than 60 days to determine a violation after they did an annual licensure survey of the facility. And the Court found that the Department lost jurisdiction because it didn't comply with the mandatory timeframe of Section 3-212C. I think our argument in this case is whether that Section 3-212C applies or not. And we contend that it does apply, even in complaint cases, because it has the longer mandatory timeframe that the Department cannot go beyond that. What did the 1st District say? They agreed that Section 3-212C is a mandatory timeframe. In that case, it did not involve a complaint survey, so Section 3-702 was not an issue there. So they did not talk about this analysis of 3-702 and whether it has to encompass 3-212C and other parts of the Act as well. One thing that the Department does raise is citations to prior cases in which the courts have looked at Section 3-702. And the two primary cases discussed are Moon Lake Convalescent Center from 1989. And there the Court said that the provisions of 3-702 are directory. And we don't disagree with that, that the provisions of 3-702 are directory. I think that case is very distinguishable from what we have here at hand for a couple reasons. First, the version of 3-702 in Moon Lake Convalescent Center is an older version. And there the timeframes for the Department to act were tied to the level of violations that were issued. And it's an entirely different setup now. Secondly, the Moon Lake Convalescent Center decision follows some flawed reasoning according to the way the situation is now. In Moon Lake, the Court said that the provisions should be directory because if they were found to be mandatory, then the Department may be put in a position where they have to rush through an investigation and issue an incomplete determination before they had all their facts together. And also, in that situation, a facility may have some incentive to drag their feet or delay the investigation, trying to butt IDPH up to that timeframe and avoid the violation. That's not the situation we have here at all. Because under our arguments of both 3-702 and 3-212C, the timeframe does not even begin to start until IDPH is completely done with their complete investigation. So any worry that IDPH would be rushed into a premature decision or a facility could stonewall is inappropriate because the timeframe doesn't even start until IDPH says it's done. There's no check on the amount of time IDPH has to do their active investigation. But once that investigation is concluded, they have a finite amount of time to determine a violation. Secondly, the Department... Does 3-212 deal with routine inspections? Is that the section that talks about how the Department shall routinely inspect these facilities? It does, Judge, but I think it encompasses all inspections. The different types of investigations that IDPH does are annual investigations on an almost yearly basis, incident report investigations where they come out in response to a facility self-reporting a problem or a complaint that has been called in by another party. Only the complaints have the extra time requirements of 3-212C for the Department to initiate a complaint timely and make a determination within 30 working days. But all of the Department's investigations and surveys have to follow the steps set forth in 3-212. One way that we see that very clearly is by... By the way, is it 60 days or 90 days in 3-212C? Presently it's 90 days. That was amended in WAVE 2010 for the timeframe relevant to this case at 60 days. Presently it's 90 days under both 2-212 and 7-02. Here's another point about 2-212C that I want to ask you to address. It begins by speaking of that subsection upon completion of each inspection, survey, and evaluation. Appropriate Department personnel shall submit a capital report and then it talks about that. And then the last sentence says, Violations shall be determined under this subsection no later than 90 days after completion of each inspection, survey, and evaluation. What do they mean by putting in the prepositional phrase, under this subsection to conclude that section where it talks about violations? It seems to me, and to be more clear, the argument you're making is that the statute should read as, in any event, all violations shall be reported no later than 60 days, etc. But they've added this under this subsection. Doesn't that limit it? It may limit it, Your Honor, but all IDP's determinations are channeled through that subsection. Because prior to that last sentence of Section 3-212C, it talks about the process for the director, reviewing the report from the surveyor, reviewing some comments from the Department, making the determination based on that. Even complaint surveys go through that same process. And Your Honor, I see my time is up. I'm going to reserve a couple minutes for... Well, you have five minutes in rebuttal anyway. Okay. All right. I'm sorry. You've got five more minutes after the red light goes on. Very good. Well, then... Just speak after your piece addresses. Okay. Thank you. Then I'll soldier on. So, Your Honor, I think that... No, you have five minutes. Okay. You've got about one minute. Okay. Thank you. You know, another thing I think takes careful consideration here is, we've talked about, should these different surveys be treated differently? And the Department's never come up with any sort of justification to say why a routine survey, an annual survey, should have a mandatory 60-day timeframe for the Department to retain jurisdiction. But on the other hand, a complaint investigation can take an unlimited amount of time for the Department to act and still retain jurisdiction. The only difference is there is the method that the Department is engaged in looking into, something like that. And why would the Nursing Home Care Act be set up in such a way that there's a strict, mandatory timeframe for the Department to get its actions done in one context, but because a citizen called up on the telephone, they have unlimited time and never lose jurisdiction. I think that's an absurd result, according to the Department's reasoning. Thank you, Counsel. You have, again, in rebuttal, an opportunity to address this further. Thank you very much. Okay. Thank you. Mr. Rousset. Good morning, Your Honors. May it please the Court. Counsel. Counsel. My name is Paul Rousset. I'm an Assistant Attorney General for the State of Illinois, and I represent the Illinois Department of Public Health in these consolidated appeals. The issue common to both of these appeals is whether the timeframe in Section 3-702D of the Nursing Home Care Act or the timeframe in Section 3-212C applies where the Department makes a determination of violations following a complaint investigation. Both the plain language of the Act and three published decisions, one issued just three months ago, UDI No. 10, as Your Honor pointed out, demonstrate that Section 3-702D applies under these circumstances. Part 7 of Article 3 of the Act applies when there's a complaint investigation and the things that happen afterwards. And under that part, when a complaint is received about a facility, the Department sends out a nurse surveyor to conduct an investigation, and at that time the surveyor decides whether it's a valid report or not. If it's a valid report, she shares that report with the facility in an informal conference so that if there's a problem, they can start working on it right then. They don't have to wait until they actually get the formal determination of violation, if there is to be one. And then the report is given to Department management, which has 30 working days under Section 3-702D to decide whether the results of the investigation show that there's been a violation of either the Act or the Department's regulations promulgated under the Act. Three published decisions... So is it your argument that this is designed to be more remedial when there's been a report of a specific problem than just the annual inspections? Correct. Each year, within 120 days of the licensure renewal, the Department does an unannounced inspection, which is discussed in 3-212C, or an unannounced inspection. And those are just looking for general problems, but they're not motivated by, say, a family member or a staff member making a specific complaint of something that they've observed. So those are two different tracks of things, and Part 7 of Article 3 talks about a complaint investigation, which is what we have in both of these cases. And there's three published decisions, UDI Number 10, Moon Lake, and Francis House that have found that the timeframe in Section 3-702D, that within 30 working days, is merely directory, and therefore the Department does not lose jurisdiction over the violations if, for some reason, it doesn't comply with that timeframe. Do those cases all deal with the issue here, whether 3-212C limitations apply? Well, the first two do not. In the first two, it was undisputed that 3-702B applied, so the only question was whether it should be construed as directory or mandatory. But in the case that came out just three months ago, UDI Number 10, it was the exact same issue presented here, where the facility in a complaint investigation was arguing that 3-212C should apply and that, therefore, the Department lost jurisdiction. So it was the exact same. In fact, the brief in that case was filed by the exact same attorney, and it was basically verbatim to the briefs filed in this case on that jurisdictional issue. So every argument that was raised here was rejected by the First District in a published decision just three months ago. Now, they couldn't have talked about it in their opening brief, because their opening brief was filed before the UDI Number 10 decision was issued. However, we discussed it in our brief, because our brief was filed afterwards, and they had a full opportunity in the reply brief to address it, but for whatever reason, they chose not to. So, slugging through these statutes sometimes is very difficult. 3-212, the title of the inspection, begins its first sentence, subsection A. The Department, whenever it deems necessary in accordance with subsection B, shall inspect, survey, and evaluate every facility. Subsection B says, if the Determinant would rather make more than the required number of unannounced inspections, the Department shall consider one or more of the following, and then it lists several things there, previous reports, previous histories, rules and regulations, and then it says, any allegations of resident abuse or neglect. Doesn't that seem to tie in, then, with the nature of outside reports, and hook in the provisions of 3-212-C? Well, I think they look at that to determine whether they're going to do more than one per year unannounced inspection. They have to do at least one a year within 120 days of the renewal date. However, if there's a problem facility that has a history of problems either found through annual inspections or from a history of complaints, then the Department has a right to go more frequently throughout the year on other unannounced inspections. So, if the Department hears allegations of resident abuse and neglect and determines to make more than the required number of unannounced inspections, which is apparently what happened here, then why doesn't that necessitate or involve the whole rest of the section? Well, this wasn't just a general unannounced inspection. It was directly, well, both of these, these are two consolidated cases, but they were both generated by specific complaints received by either a family member or, in the Mabel Terras case, it was a woman who worked at the day program. So you're then identifying the phrase unannounced inspections as being the key here. Right. Unannounced inspections are generally more random inspections. And, in fact, there's a penalty if anyone at the Department tips off the facility that one is coming because they don't want them pretty off the place and try to hide problems. But when there's a complaint received, then Part 7 applies. And within Part 7, there are 10 different time frames that the legislature has specified for complaint investigations in particular. And, as we know, the specific controls over the general, even if you could argue that 3-212C applies, but I don't think you can because it doesn't mention complaint investigations. It mentions inspections and surveys and things like that. So both the plain language of the Act contemplates that 3-702D would apply, as well as these three published decisions. And also, these three cases, UDI Number 10, Moon Lake, and Francis House, all point out that giving Section 3-702D a directory interpretation is consistent with the purpose of the Act, which, after all, is protecting the residents. It doesn't protect the residents to stop a Department investigation because, or not an investigation, but a Department proceeding because, you know, someone at the Department, either through inattention or because of overwork, was not able to comply with the statutory time frame. I mean, in these cases, it was considerably past the 30 working days, which is approximately six weeks, but there have been cases where the determination was made two days late, and the facilities are still jumping on this argument and saying, we should get away scot-free with no consequences for these violations because the Department missed the time frame, even though the resident and their family obviously has no control over whether the Department complies with the time frame or not. So in both the UDI Number 2 case here, involving the pressure sores on multiple patients, and in the UDI Number 10 case in the First District, where the facility did not provide CPR to the patient, the facilities haven't even challenged the merits of the determination that they violated the Act. Instead, they're just making this technical jurisdictional argument as a way to wriggle out from under the violations. Now, in their opening brief, the facilities argued that Section 3-212C applies in lieu of Section 3-702D, and arguably pointed out that that would render 3-702D a nullity. So in response to that, in their reply brief, they're now saying that they both apply, that it's a kind of a floor and a ceiling, where the Department should comply with 3-702D, but must comply with 3-212C. And I think that argument should be rejected for two reasons. First, it was raised for the first time in the reply brief, so it's forfeited. Second, it doesn't make sense, because when the legislature has wanted to put in Part 7, both a ceiling and a floor, it does so explicitly in Section 3-707, involving the time for the director to issue his final decision after the ALJ hearing, it does put in both a ceiling and a floor. It says he's supposed to issue the decision within 30 days, unless additional time not to exceed 90 days is needed. So if the legislature had wanted to put both a ceiling and a floor into 702D, it knew how to do so, and it could have done so, but it did not. I think if you like the recent decision from the First District, then I think we should follow it. Correct, Your Honor. Obviously, you're not bound by it, but they've given us no reason. They don't even acknowledge it. Normally, a counsel would try to say the reasoning is wrong, explain why you should not follow it. They did not even do that here. So I think that should be read as acquiescence, that it was correctly decided. Unless the Court has any further questions, we would ask that you affirm. Thank you, Counsel. Mr. Lundy? Thank you, Your Honor. First of all, I have to apologize that in response to Justice McCullough's question about UDI No. 10, I did misspeak. I was thinking about the pinnacle opportunities case, but UDI No. 10 did involve the same issue that we have before the Court here. I don't understand. Why you didn't discuss it in your reply brief? Your Honor, first, it's not binding on this Court, but the reasons in our opening brief and our reply brief are really similar in addressing it. The UDI decision really rested on their determination that the public policy underpinnings of the Act require protection of the residents and finding that a timeframe is mandatory would be worse for the residents and general public than holding IDPH to a mandatory timeframe. We did discuss that same public policy underpinning in our opening brief and refer back to the Francis House case on that issue. But you never referred to UDI? No, I didn't. Well, for what it's worth, Counsel, you're right that we are required to follow it, but speaking just for myself, I'm always a happier guy when I can look to demonstrate why what they said shouldn't be followed. I understand. Thank you. Go ahead. But it shouldn't be followed because they take this concept of protection of residents and turn it on its head. The Francis House Court addressed this and said, hey, if the Department is so concerned with protecting residents, it should do things on time. It should enforce its system according to the timelines that the Nursing Home Care Act puts forth. The Department seems almost scornful of this argument about jurisdiction, calling it a technicality. Well, the Department only has authority granted to it under the Nursing Home Care Act. And that is explicitly telling the Department that it has to make its determination in no later than 60 days to preserve... Well, you're exactly right, Counsel, that it's not to the Department's credit that we should have to be dealing with what does their failure to comply with various times mean. Does it mean that they can't proceed further? Or is it just directory and that they are just not doing the job the legislature directed them to do? You know, and maybe they are scornful. Who cares? The point is, we still have to apply the legislative scheme. And if the legislature essentially provides aspirational statutes as opposed to deadlines beyond which they may not proceed, that's their call. I understand, but we don't have to think about this as an aspirational scheme because they've specifically provided in 3-212C that it's a mandatory timeframe. And drawing this distinction that a complaint is generated differently really turns the Act as an entire regulatory scheme on its head. Complaint surveys are unannounced too. There's no real difference in how the surveys... What do you mean by a complaint survey? A complaint that is called into the Department and initiates sending surveyors out to do an inspection. That's a complaint survey in response to an annual survey. All of those are unannounced to the facility. The facility experiences those really identically. The Department has the extra timeframes in 3-702 to do them quicker. But the statutory scheme of the Act requires that the Department do investigations, find out if something's there, find out if that is a violation. And if they've determined a violation, they have to take action, or if they don't do it in time, they lose it. Very briefly, with respect to the merits of Maple Terrace, the Department's Administrative Law Judge and the District Court really extrapolated out the requirements that aren't found in the law to impose the duty to provide nursing services after real superficial bumps and bruises, fingernail scratches to a resident. Looking at the law that requires the direct support personnel to be trained in first aid and notifying the administration of bumps and bruises and superficial injuries says that the direct support personnel are the correct people to do that evaluation. Nursing services are not necessary. You're out of time, but you have this all set forth in your brief, and we'll consider it there. Thank you very much. Thank you, Counsel. I'll take this amendment and advise them to be in recess.